United States District Court
Southern District of Texas
**ENTERED**
September 21, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER EUSTICE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:19-CV-4813** |
| | § | |
| **BAKER HUGHES, A GE COMPANY, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] is Defendant's Motion for Judgment on the Pleadings as to Plaintiff's Second Amended Complaint. (Dkt. No. 17.) Based on a thorough review of the pleadings, motions, and relevant law, the Court **RECOMMENDS** Defendant's Motion for Judgment on the Pleadings be **GRANTED IN PART** and **DENIED IN PART**.[2]

### I.   BACKGROUND

Plaintiff Christopher Eustice ("Plaintiff") filed this *pro se* lawsuit in the 189th Judicial District of Harris County, Texas on October 30, 2019, alleging employment discrimination in violation of Title I of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973, and Chapter 21 of the Texas Labor Code. (Dkt. No. 1-1.) Defendant

---

[1] On March 9, 2020, the District Judge referred the entire case to the Magistrate Judge for full pretrial management pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 9.) The undersigned became the Magistrate Judge assigned to this case on July 10, 2020.

[2] The docket contains a previous Motion for Judgment on the Pleadings filed March 20, 2020. (Dkt. No. 11.) Because Plaintiff subsequently amended his complaint and Defendant again moved for judgment on the pleadings, the Court **RECOMMENDS** the motion filed March 20, 2020 (Dkt. No. 11) be **DENIED AS MOOT**.

Baker Hughes, a GE Company, LLC ("Defendant" or "Baker Hughes") removed the case to federal court on December 11, 2019 based on federal question and supplemental jurisdiction under 28 U.S.C. §§ 1331 and 1367. (Dkt. No. 1.)

On May 29, 2020, Plaintiff filed an amended complaint, alleging similar facts and the same causes of action as his state court complaint. (Dkt. No. 16.)[3] Particularly, Plaintiff alleges Defendant refused to hire him for "numerous positions" between Fall 2012 and Spring 2019 based on his disability[4] or in retaliation for a previous lawsuit he brought against Texas A&M University under the ADA and Rehabilitation Act, which is easily discoverable on the internet. (*Id.* ¶¶ 8-10, 22.) According to Plaintiff, at least three less qualified candidates were hired in his place and he missed out on the work experience, compensation, and future employment opportunities he would have received at Baker Hughes. (*Id.* ¶¶ 10-12, 33.) Plaintiff also alleges he requested disability accommodations during the recruitment process, but that they were refused. (*Id.* ¶¶ 18-19.)

Plaintiff asserts in his amended complaint that he exhausted his administrative remedies by filing a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC"). (*Id.* ¶ 13.) Plaintiff attached several administrative documents to his amended complaint, including an Intake Questionnaire dated October 3, 2017 and a signed Charge of Discrimination dated December 15, 2017. (Dkt. No. 16 at 20, 31-34.) In both these forms, Plaintiff states that Baker Hughes failed to hire him for an undergraduate internship he applied for on February 1, 2017, allegedly in response to his lawsuit against Texas A&M University. (*Id.* at 20, 31-32.) According to Plaintiff, Baker Hughes informed him in mid-

---

[3] Plaintiff titles this complaint his "Second Amended Complaint." However, it is actually his first and only amended complaint.

[4] Plaintiff identifies his disability as Attention Deficit/Hyperactive Disorder ("ADHD"). (Dkt. No. 16 ¶ 8.)

February[5] that he made it past all the interview stages and that he would be considered for selection by the end of March 2017. (*Id.* at 20, 32.) However, Plaintiff never heard back. (*Id.*)

On June 12, 2020, Defendant filed a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), arguing Plaintiff's claims were either time-barred or not exhausted at the administrative level. (Dkt. No. 17.) As to the timeliness argument, Defendant believes Plaintiff's claims based on events before February 17, 2017 are time-barred under the ADA (300 days before the EEOC/TWC Charge) and his claims based on events before June 16, 2017 are time-barred under Texas law (180 days before the EEOC/TWC Charge). (*Id.* at 5-7.) In response, Plaintiff argues that Defendant calculated the time limits using the incorrect date—the date of the EEOC/TWC Charge rather than the date of the Intake Questionnaire—and in any event, his ADA claim pertaining to the undergraduate internship is not time-barred because it occurred at the end of March 2017. (Dkt. No. 21 at 1.) Defendant argues, in reply, that even if the Court uses the Intake Questionnaire date to calculate timeliness, all but Plaintiff's ADA claim pertaining to the undergraduate internship are time-barred or otherwise outside the scope of the administrative proceedings. (Dkt. No. 22 at 2-4.)

The Court finds that, because Plaintiff learned he was not hired for the undergraduate internship at the end of March 2017, Plaintiff's claims based on this incident under the ADA are timely and Plaintiff's claims based on this incident under Texas law are untimely—regardless of which form constitutes the filing of an administrative complaint for a timeliness analysis. The Court also finds that all other ADA and state-law claims alleged in the amended complaint should

---

[5] The Intake Questionnaire states this occurred on February 15, 2017, whereas the EEOC/TWC Charge states this occurred on February 12, 2017. (Dkt. No. 16 at 20, 32.) This discrepancy has no bearing on the Court's findings and recommendations.

be dismissed for failure to exhaust administrative remedies, as they are clearly outside the scope of the EEOC/TWC Charge and Intake Questionnaire. Finally, Plaintiff's claims under the Rehabilitation Act should survive because Defendant did not explain why they should be dismissed and they are not subject to the same exhaustion requirements as Plaintiff's other claims.

## II. STANDARDS FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) (quotations and alterations omitted). A 12(c) motion for judgment on the pleadings is analyzed under the same standards as a 12(b)(6) motion for failure to state a claim. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002). To survive either motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[6]

"In deciding whether the complaint states a valid claim for relief, [the court] accept[s] all well-pleaded facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *Robinson v. Webster Cty.*, No. 20-60301, 2020 WL 5160059, at *2 (5th Cir. Aug. 31, 2020) (quotations omitted). "Pro se complaints are held to less stringent standards than formal pleadings

---

[6] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

drafted by lawyers but are nonetheless insufficient if they contain only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Ganheart v. Brown*, 740 F. App'x 386, 389 (5th Cir. 2018) (quotations and alterations omitted); *see Van Duzer v. U.S. Bank Nat'l Ass'n*, 995 F. Supp. 2d 673, 690 (S.D. Tex.) (construing *pro se* plaintiffs' complaint liberally on a 12(c) motion for judgment on the pleadings), *aff'd*, 582 F. App'x 279 (5th Cir. 2014).

### III. PLAINTIFF'S ADA CLAIM BASED ON FAILURE TO HIRE FOR THE UNDERGRADUATE INTERNSHIP IN 2017 IS TIMELY AND HIS TEXAS LAW CLAIM BASED ON THE SAME EVENT IS UNTIMELY.

"The ADA prohibits covered entities from 'discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Spann v. Frisco Indep. Sch. Dist.*, No. 19-CV-603, 2020 WL 2167624, at *3 (E.D. Tex. Apr. 14, 2020) (quoting 42 U.S.C. § 12112(a)), *report and recommendation adopted*, 2020 WL 2126423 (May 5, 2020).[7] To bring a claim under the ADA, a plaintiff must first exhaust his administrative remedies by filing a timely charge with the EEOC or state agency that identifies the illegal employment practices at issue. *Owens v. Dallas Cty. Cmty. Coll. Dist.*, 793 F. App'x 298, 300 (5th Cir. 2019). "In Texas, the plaintiff must file his EEOC charge within 300 days of the alleged unlawful action." *Id.* at 301; *see also Simotas v. Kelsey-Seybold*, 211 F. App'x 273, 275 (5th Cir. 2006).[8] The 300-day period begins to run "the day the

---

[7] "The ADA incorporates by reference the procedures applicable to actions under Title VII of the Civil Rights Act of 1964." *Das v. Am. Airlines, Inc.*, No. 19-CV-870, 2020 WL 364264, at *2 (N.D. Tex. Jan. 21, 2020) (citing 42 U.S.C. § 12117(a)); *see also Simotas v. Kelsey-Seybold*, 211 F. App'x 273, 275 (5th Cir. 2006)).

[8] Generally, an EEOC charge under the ADA must be filed within 180 days of unlawful action. *Baldwin v. Extended Stay Am. Co.*, No. 16-CV-604, 2016 WL 4386098, at *2 (W.D. Tex. Aug. 17, 2016). In deferral states such as Texas, where a state agency has been established to grant relief for employment discrimination, this deadline is extended to 300 days. *Id.*

employee learns that the challenged decision has been made." *Simotas*, 211 F. App'x at 275 (collecting cases); *see also Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003) ("The limitations period beg[ins] to run from the time [plaintiff knows] or reasonably should have known that the challenged act [has] occurred.") (quotations omitted).

Chapter 21 of the Texas Labor Code, the Texas Commission on Human Rights Act ("TCHRA"), protects against employment discrimination based on disability, among others, and retaliation for protected activity. *See* Tex. Lab. Code §§ 21.051 & 21.055.[9] It is intended, at least in part, to implement the policies embodied in Title I of the ADA. *Id.* § 21.001(3). Under Chapter 21, a plaintiff must file a complaint with the TWC within 180 days of the alleged unlawful employment practice. *Id.* § 21.202(a). "The 180-day limitations period begins to run when an employee is informed of the allegedly discriminatory employment decision." *Green v. Costco Wholesale Corp.*, No. 15-CV-1868, 2017 WL 10110295, at *3 (N.D. Tex. May 30, 2017) (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996)).

Here, despite the fact the EEOC/TWC Charge ("Charge") contains the pre-filled dates of February 1 to 15, 2017, Plaintiff cannot be said to have learned of the allegedly discriminatory failure to hire during those dates. Both the Charge and Intake Questionnaire state that he was informed in mid-February that he made it past the interview stage of the hiring process and that he would be considered for the position at the end of March. (Dkt. No. 16 at 20, 32.) Both documents also state that he never heard back from Defendant about his hiring status. (*Id.*) The Court, therefore, can only say Plaintiff learned he was not hired on March 31, 2017. *See Williams v.*

---

[9] Plaintiff does not specify which section(s) of Chapter 21 he brings his claims under. However, given Plaintiff is *pro se*, the Court construes his complaint liberally.

*Tarrant Cty. Coll. Dist.*, 717 F. App'x 440, 445 (5th Cir. 2018) ("Although our court strictly construes the exhaustion requirement, it views administrative charges in the broadest reasonable sense. Because administrative charges are rarely drawn by an attorney, the only absolutely essential element of a timely charge of discrimination is the allegation of fact contained therein.") (quotations and citation omitted), *reh'g denied* (Feb. 20, 2018).

Plaintiff had until January 25, 2018 under the ADA (300 days later) and until September 27, 2017 under the TCHRA (180 days later) to file his administrative claim. *See Simotas*, 211 F. App'x at 275; *Green*, 2017 WL 10110295, at *3.[10] As stated above, Plaintiff filed the Intake Questionnaire on October 3, 2017 and the signed Charge on December 15, 2017. (Dkt. No. 16 at 20, 34.) Regardless of which document is used to calculate the timeliness of Plaintiff's claims,[11]

---

[10] To the extent Plaintiff asserts his claims are subject to the continuing violation theory, (*see* Dkt. No. 21 at 1), this argument is without merit. "The continuing violation theory relieves a plaintiff of [a timeliness] requirement if he can show a series of related acts, one or more of which fall within the limitations period." *Brown v. City of Shreveport*, 54 F. App'x 793 (5th Cir. 2002) (quotations omitted). "A one-time employment event, including the failure to hire, is the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued. Thus, it cannot be saved by the continuing violation doctrine." *Id.* (quotations and citations omitted) (rejecting application of continuing violation theory to two failure-to-hire allegations by the same employer and affirming dismissal based on failure to file timely administrative charges); *see also Muthukumar v. Univ. of Tex. at Dallas*, 471 F. App'x 407, 409 (5th Cir. 2012) (continuing violation theory does not apply to "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire because they are easy to identify and each constitutes a separate actionable unlawful employment practice") (quotations and alterations omitted).

[11] In some situations, the court can determine that an untimely charge relates back to a timely intake form. For example, the Fifth Circuit has stated that "an intake questionnaire that informs the EEOC of the identity of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent is sufficient to set the administrative machinery in motion." *Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007) (quotations omitted) (using intake form to calculate timeliness). However, some district courts have interpreted this to require actual notice be given to the defendant, even if the intake form contains all of the necessary information. *See, e.g.*, *Redford v. KTBS, LLC*, 135 F. Supp. 3d 549, 557 (W.D. La. 2015) ("[The] holding that an EEOC intake questionnaire can substitute for a verified charge is not without limits. The employer's notification that a discrimination suit has been filed against it is of foremost importance when

the result is the same: Plaintiff's ADA claim based on this failure to hire is timely and his TCHRA claim is time-barred and must be dismissed with prejudice. *See, e.g.*, *Washington v. City of Austin*, No. 15-CV-222, 2015 WL 12990135, at *7 (W.D. Tex. Oct. 7, 2015) (dismissing TCHRA claims because they were not filed with an administrative agency within 180 days of alleged misconduct), *aff'd*, 651 F. App'x 260 (5th Cir. 2016).[12]

### IV. ALL OTHER CLAIMS FROM FALL 2012 TO SPRING 2019 UNDER THE ADA AND TCHRA SHOULD BE DISMISSED FOR FAILURE TO EXHAUST.

As described above, claims under the ADA and TCHRA must be administratively exhausted before they are brought in federal court. *Williams*, 717 F. App'x at 445. A claim is exhausted if it is "within the scope of the investigation which can reasonably be expected to grow out of the administrative charge of discrimination." *Id.* (quotations and alterations omitted). "A claim may reasonably be expected to grow out of a charge when the charge did or should have put the employer on notice of a potential claim." *Dowdell v. Culpepper & Assocs. Sec. Servs., Inc.*, No. 19-CV-11410, 2020 WL 5095274, at *3 (E.D. La. Aug. 28, 2020); *Manning*, 332 F.3d at 878

---

determining whether a charge has been made. If an intake questionnaire is sufficiently detailed . . . *and results in the EEOC notifying an employer of a pending claim against it*, then that intake questionnaire is sufficient to substitute for a verified charge.") (emphasis added). Here, notice to Defendant was not given as a result of Plaintiff's Intake Questionnaire; it was given, at the earliest, in an email between the EEOC and Baker Hughes on December 11, 2017. (Dkt. No. 16 at 44.) This was apparently the result of Plaintiff filing an unsigned charge on December 1, 2017. (*Id.* at 12, 22-24.) Formal notice was not given to Baker Hughes until December 31, 2017, after Plaintiff signed the Charge on December 15, 2017. (*Id.* at 26.) Thus, under some caselaw, the Intake Questionnaire could not provide the operative date for a timeliness analysis. The Court need not resolve this issue, however, because the result is the same using the date of the Intake Questionnaire, the date of the Charge, or even the date of the unsigned charge.

[12] The court in *Washington v. City of Austin* dismissed plaintiff's claims without prejudice because it found their untimeliness prevented the court from having subject-matter jurisdiction. 2015 WL 12990135, at *7. However, the Fifth Circuit has recently held the TCHRA's 180-day timeliness requirement is not jurisdictional. *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 552-54 (5th Cir. 2020). Therefore, this Court maintains subject-matter jurisdiction and recommends dismissing the claim with prejudice, as it is impossible for Plaintiff to cure its untimeliness. *See id.* at 554-55.

("One of the central purposes of the employment discrimination charge is to put employers on notice of the existence and nature of the charges against them.") (quotations omitted).

Although Plaintiff brings his federal lawsuit based on failure to hire for numerus positions between Fall 2012 and Spring 2019, the Charge and Intake Questionnaire only reference the failure-to-hire incident that occurred in February and March 2017. (Dkt. No. 16 at 20, 32.) The other administrative documents make clear that this was the only incident at issue in the investigation. (*See, e.g.*, *id.* at 42.) Any other incident from Fall 2012 to Spring 2019 could not have reasonably been expected to grow out of the Charge nor put Defendant on notice. These ADA and TCHRA claims, therefore, should be dismissed with prejudice for failure to exhaust administrative remedies. *See, e.g.*, *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 577-78 (5th Cir. 1993) (finding one failure-to-hire allegation "could not reasonably be expected to be within the scope of the EEOC investigation" for another failure-to-hire allegation against the same defendant, despite any duty to construe EEOC charges liberally); *Turman v. Greenville Indep. Sch. Dist.*, No. 03-CV-1786, 2005 WL 659017, at *3 (N.D. Tex. Mar. 18, 2005) (determining that a failure-to-hire allegation for Fall 2001 was outside the scope of the EEOC charge, which listed only a failure-to-hire allegation for Summer 2002, and dismissing the allegation for failure to exhaust).[13]

## V. PLAINTIFF'S CLAIMS UNDER THE REHABILITATION ACT SHOULD SURVIVE BECAUSE DEFENDANT DOES NOT EXPLAIN WHY THEY SHOULD BE DISMISSED AND THEY ARE NOT SUBJECT TO EXHAUSTION REQUIREMENTS.

"The Rehabilitation Act provides protection from discrimination based on disability to employees of the federal government, federal agencies, and programs receiving federal

---

[13] The Court recommends dismissing these claims with prejudice because any charge Plaintiff could subsequently file with the EEOC, based on events between Fall 2012 and Spring 2019, would be untimely.

funds." *Saldana-Fountain v. United States*, No. 15-CV-39, 2016 WL 626573, at *11 (W.D. Tex. Feb. 16, 2016) (quotations omitted), *aff'd*, 693 F. App'x 295 (5th Cir. 2017); *see* 29 U.S.C. § 794. The Rehabilitation Act is generally analyzed under the same standards as the ADA and other employment discrimination statutes; however, the exhaustion requirements do not apply to a Rehabilitation Act claim against a grantee of federal funds. *Saldana-Fountain*, 2016 WL 626573, at *11 & n.10; *see Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015) ("Although a plaintiff must exhaust his or her administrative remedies before pursuing a Rehabilitation Act claim against a federal *agency,* it need not do so before suing a federal *grantee.*"); *Prewitt v. U.S. Postal Serv.*, 662 F.2d 311, 314 (5th Cir. 1981).

Plaintiff's amended complaint clearly brings claims under Section 504 of the Rehabilitation Act. (Dkt. No. 16 ¶ 17.) However, Defendant does not explain any basis for dismissing them, nor does Defendant even recognize that Plaintiff has brought Rehabilitation Act claims.[14] To the extent the Court should apply Defendant's exhaustion argument to Plaintiff's Rehabilitation Act claims, this argument would still fail. Plaintiff alleges that Defendant "is a recipient of federal funds under the Rehabilitation Act of 1973." (*Id.* ¶ 4; *see also id.* ¶ 20.) The Court construes this statement to allege that Defendant is a federal grantee, which Defendant fails to dispute. Plaintiff's Rehabilitation Act claims are thus not subject to exhaustion requirements and should not be dismissed at this time. *See, e.g.*, *Dugger v. Stephen F. Austin State Univ.*, 232 F. Supp. 3d 938, 953 (E.D. Tex. 2017) (finding plaintiff was not required to exhaust administrative remedies under the Rehabilitation Act because his claims were against a federal grantee).

---

[14] Defendant only requests the Court dismiss the amended complaint "in its entirety." (Dkt. No. 17 at 1, 8.)

## VI.     CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Defendant's Motion for Judgment on the Pleadings be **GRANTED IN PART** and **DENIED IN PART** as described above.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on September 21, 2020.

Sam S. Sheldon
United States Magistrate Judge